DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Nicholas Bobo, appeals from his conviction in the Summit County Court of Common Pleas for felonious assault. We affirm.
 i. {¶ 2} On January 2, 2003, the Summit County Grand Jury indicted Mr. Bobo on two separate counts: (1) aggravated robbery, in violation of R.C. 2911.01(A)(3); and (2) felonious assault, in violation of R.C.2903.11(A)(1). A jury trial followed. Thereafter, the jury found Mr. Bobo not guilty of aggravated robbery, and found him guilty of felonious assault. The trial court sentenced him accordingly. Mr. Bobo timely appeals, and asserts two assignments of error for review.
 ii. a. First Assignment of Error
"The trial court erred in denying the admission of two prior False Allegations of Physical Assaults made by the alleged victim."
 {¶ 3} In his first assignment of error, Mr. Bobo alleges that the trial court abused its discretion when it failed to admit evidence of allegations of physical assault made by Wayne Barnes, the victim. Mr. Bobo's allegation lacks merit.
 {¶ 4} This Court has stated that:
"A motion in limine is a request for a preliminary order regarding the admissibility of evidence that a party believes may be improper or irrelevant. The purpose of a motion in limine is to alert the court and counsel of the nature of the evidence in order to remove discussion of the evidence from the presence of the jury until the appropriate time during trial when the court makes a ruling on its admissibility." (Emphasis omitted.) (Citations omitted.) Nurse Griffin Ins.Agency, Inc. v. Erie Ins. Group, 9th Dist. No. 20460, 2001-Ohio-1725.
 {¶ 5} An appellate court need not decide the propriety of an order granting or denying a motion in limine unless the claimed error is preserved by an objection, proffer, or ruling on the record at the proper point during the trial. Harbottle v. Harbottle, 9th Dist. No. 20897, 2002-Ohio-4859, at ¶ 55; Garrett v. Sandusky (1994), 68 Ohio St.3d 139,141, citing State v. Grubb (1986), 28 Ohio St.3d 199, 202-03. The necessity to preserve the claimed error results because a "ruling on a motion in limine is only a preliminary ruling." (Emphasis added.) Dobbinsv. Kalbaugh, 9th Dist. Nos. 20714, 20918, and 20921, 2002-Ohio-6465, at ¶ 20, citing State v. Hill, 75 Ohio St.3d 195, 202-203,1996-Ohio-222. Accordingly, when the trial court prohibits a party from presenting certain evidence at trial, this party must "seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Harbottle at ¶ 56, quoting Grubb, 28 Ohio St.3d 199 at paragraph two of the syllabus.
 {¶ 6} In the instant case, the trial court granted the State's motion in limine to exclude evidence regarding Wayne Barnes' allegations of physical assault. As such, Mr. Bobo was required to seek the introduction of this evidence by proffer or otherwise to properly preserve this issue for appeal. See Harbottle at ¶ 56; Garrett,68 Ohio St.3d at 141. A thorough review of the record reveals that Mr. Bobo failed to do so. Therefore, Mr. Bobo has not properly preserved this error for appeal, and this Court has nothing to review. See Harbottle at ¶ 56. Mr. Bobo's first assignment of error is overruled.
 B. Second Assignment of Error
"[Mr. Bobo's] conviction was against the manifest weight of the evidence."
 {¶ 7} In his second assignment of error, Mr. Bobo challenges the adequacy of the evidence presented at trial. Specifically, Mr. Bobo avers that his conviction for felonious assault was contrary to the manifest weight of the evidence. We disagree.
 {¶ 8} "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 9} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Furthermore, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of fact. Statev. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757.
 {¶ 10} Mr. Bobo was found guilty of felonious assault, in violation of R.C. 2903.11(A)(1), which provides in relevant part that, "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 11} At trial, Wayne Barnes ("Barnes"), the victim, testified that he was employed by City Yellow Cab as a cab driver. He further testified that he received a call at approximately 11:00 p.m. to go to Edgewood Avenue on December 21, 2002. Barnes explained that when he arrived at the address three males and three females "crammed" into his cab. He further explained that these individuals carried bottles and cups of beer. Barnes stated that he informed the individuals that it was against company policy to transport more than four individuals; however, the individuals became mad and insisted that he drive them to their destination. Barnes additionally stated that one of the individuals, a "light-skinned guy[,]" "heated up the argument with [him]." He testified that he then exited the cab, and the "light-skinned guy" grabbed him by his shirt. Barnes asserted that Mr. Bobo then approached him and hit him on the head with an object.
 {¶ 12} Officers Jason Bailey and Brian Cresswell, Sr., testified that they responded to a call from dispatch on December 22, 2002. They further testified that when they arrived at the scene of the assault, they encountered Barnes and he was bleeding from his face. Bailey explained that Barnes appeared disoriented; Creswell noted that Barnes seemed "wobbly" and "woozy." They stated that they found beer bottles, a large piece of concrete, and glass in the roadway. Finally, both officers testified that Barnes identified his attacker as "Chrissy's son."[1]
 {¶ 13} Detective Michael Fox testified regarding the items he found at the scene. Specifically, he stated that he found an empty bottle of Budweiser Ice; a large piece of concrete; a Budweiser Ice beer carrier; broken glass on the roadway; and blood on the roadway.
 {¶ 14} Detective Jerome McMillan testified that he initially encountered Barnes in the emergency room. Detective McMillan stated that Barnes had blood on his face, side of his head, ear, and on his shirt; he also had swelling under his left eye. Detective McMillan further testified that he showed Barnes a photo array, and Barnes picked Mr. Bobo out of the array as the individual who had hit him. Detective McMillan asserted that he spoke with Mr. Bobo and he admitted that he had hit Barnes with a full beer bottle. He further asserted that Mr. Bobo justified his actions by stating that Barnes had a gun and had fired a round at him. Detective McMillan noted that a gun was not recovered in the course of the investigation, and that no evidence existed to substantiate Mr. Bobo's claim that a gun had been fired.
 {¶ 15} Following the State's witness, Mr. Bobo testified. Mr. Bobo stated that he had been drinking the night of the assault. He further stated that a cab company had been called, and when the cab arrived, Barnes explained that he could not drive all of the individuals. Mr. Bobo testified that they offered Barnes extra money to drive them to their destination. He stated that Barnes refused to drive them, and then the "light-skinned [guy]" and Barnes began to argue. Mr. Bobo explained that he decided to get involved in the argument when Barnes stated, "`I got something in the trunk for you alls' asses,'" and that Barnes "popped" open the trunk. Mr. Bobo testified that he believed a weapon was in the trunk of the cab, and, therefore, "acted on Barnes with a bottle out of fear that [his] life was in danger." He asserted that he hit Barnes with a bottle of beer, and noted that he had three bottles of Budweiser Ice in a six-pack carrier. Mr. Bobo acknowledged that he did not look in the trunk and that he never saw a weapon.
 {¶ 16} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Mr. Bobo of felonious assault. Accordingly, Mr. Bobo's second assignment of error is overruled.
 iii. {¶ 17} Mr. Bobo's assignments of error are overruled. The conviction in the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Slaby, P.J. and Carr, J., Concur.
[1] We note that Mr. Bobo's mother is named Chrissy King.